UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU,

        Plaintiff,                                  Civil Action No. C-1-01-284
  vs.

THE CHRIST HOSPITAL, et al.,               (Dlott, J., Perelman, M.J )

        Defendants.

**REPORT AND RECOMMENDATION[1] THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED (Doc. 62) AND THIS CASE CLOSED**

Plaintiff, Darlington Amadasu, initiated this action on May 5, 2001, by filing a *pro se* complaint pursuant to 42 U.S.C. § 2000e-5, 42 U.S.C §§ 1981, 1983, 1985, and 1986, 29 U.S.C. § 621 (ADEA) and 42 U.S.C. § 12101 (ADA).  (Doc. 2).  Plaintiff's complaint also alleges violations of the First, Fifth and Fourteenth Amendments and various state law claims.  *Id*.  Plaintiff's allegations arise out of his three week employment with Christ Hospital.

Plaintiff is a fifty-two year old black male, originally from Nigeria, who alleges that he suffers from depression.  (Doc. 2).  In June 2000, plaintiff submitted his resume to the Health Alliance of Greater Cincinnati, Inc. ("Alliance") seeking a position as a

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

vascular sonographer at Christ Hospital, ("Hospital)," a member of the Alliance network of hospitals. (Doc. 2, ¶ 10). Sharyn Makrancy, the Corporate Recruiter for the Alliance, who had been directed to assist in the recruitment of a vascular sonographer at the Hospital received his resume and asked him to submit an application. (Doc. 62, Ex. 3, Affidavit of Sharyn Makrancy ("Makrancy Aff."), ¶¶ 2-3)). Based on the skills and experience documented in plaintiff's resume and application, he was selected to interview for the position. *Id*. at ¶ 4.

On or about June 23, 2000, David Parlato, the technical director of the Vascular Lab at the Hospital, interviewed plaintiff. (Doc. 62, Ex. 1, Affidavit of David Parlato ("Parlato Aff."), ¶ 5)). Although plaintiff was not certified by the American Registry of Diagnostic Medical Sonographers ("ARDMS") as a vascular sonographer he represented to Mr. Parlato that he was a veteran in that field, had the skill set to immediately go to work, and could quickly and easily obtain Certification.[2] *Id.* Based on the representations made by plaintiff during his interview with Mr. Parlato, an offer of employment was extended to and accepted by plaintiff. *Id*. at ¶ 6. He was hired into the classification of an "introductory employee." Makrancy Aff. ¶ 8.

---

[2] A vascular sonographer is a medical technologist who uses specialized equipment to examine blood vessels of patients. Parlato Aff. ¶ 3. Prior to the summer of 2000, the Hospital had been in need of additional vascular sonographers and was actively recruiting to fill those positions. *Id.* According to Parlato, it is not the policy of the Hospital to train unskilled or unqualified vascular sonographers. *Id*. at ¶ 4. Rather, the Hospital requires that applicant's for vascular sonographer positions possess "Certification through the ARDMS." *Id.* Alternatively, the Hospital will consider an applicant who is not Certified, if his or her experience indicates that he or she could be a self-sufficient vascular sonographer and could quickly and easily attain ARDMS certification. *Id.*

Plaintiff began his employment with the Hospital on July 10, 2000. His first two days were spent in orientation known as "corporate training," after which, under the close supervision of Mr. Parlato, he began performing sonongraphy examinations. Parlatto Aff. at ¶ 8. However, at no time during his three week employment with the Hospital did plaintiff perform any examinations alone, Mr. Parlato often assisting or closely supervising plaintiff during patient examinations.

Mr. Parlato concluded that plaintiff "displayed a significant inability to perform the job of a vascular sonographer." *Id*. at ¶ 9. Plaintiff required significant one-on-one attention and was repeatedly counseled regarding his poor on the job performance. *Id.* Despite Mr. Parlato's guidance and assistance, plaintiff "continued to display difficulty in performing routine exams, . . . displayed difficulty in maneuvering the ultrasound probe, he confused right-sided and left-sided vessels, and he caused physical pain to some of the patients he examined." *Id.* at ¶ 9. Accordingly, Mr. Parlato recommended that the Hospital terminate plaintiff and he was let go on August 1, 2000. *Id.* at ¶ 11.

However, according to plaintiff, while employed at the Hospital, he was discriminated against and subjected to a hostile environment based on his age, race, national origin and perceived disability. Plaintiff maintains that he was "coldly received" by the other three vascular technicians, all of whom where white males and asserts that he was "denied keys to the vasculab and passwords to the computers because Mr. Parlato said that blacks were unreliable and that did not trust black[s] that often stole from Christ hospital." *Id*. at ¶ 24, 26. Additionally, plaintiff maintains that he was "referred to with

3

racial slurs, epithets, and stereotyping comments" and maintains Mr. Parlato stated that he would have problems working with someone who had a disability like plaintiff's, was not comfortable working with him because he was as old as his father, and expressed concern regarding his heavy African accent. *Id.* at ¶ 27, 31. Plaintiff also stated that in the presence of the other technicians, Mr. Parlato stated "[t]his nigger is making as much money as I am making." (Amadasu deposition, page 278).

Plaintiff also maintains that he reported his complaints of discrimination to the Hospital recruiter. In his deposition, he stated that on July 20, 2000, he received a phone call from Ms. Makrancy informing him that it was the policy of the hospital to call new associates to find out how they were adjusting to their new environment. (Amadasu deposition, page 270). Plaintiff testified that he told her:

> That place is hell. They don't want me there. I am in a hostile environment. I told her I was not given a key to the laboratory. They have not given me a password to the computer. They have not given me orientation in the department. . . They didn't give me the protocol. They did not – in fact, each technician took each of the rooms as their own private domain. . . I was ostracized, segregated.

(Amadasu deposition, page 269-270). Plaintiff further testified that he memorialized the complaints made during that phone conversation, along with other complaints of discrimination, in a letter to the Hospital dated July 20, 2000. *Id.* at 271.

Defendants deny all of plaintiff's assertions, and maintain that plaintiff's version of the facts simply did not occur.

Plaintiff's complaint alleges the following twenty-five causes of actions against the

Alliance, the Hospital, Mr. Parlato, and Mr. Thomas Kemme[3]:

1. Race and National Origin Discrimination 42 U.S.C. § 2000e et seq.;
2. Hostile Environment, Racial Harassment 42 U.S.C. § 2000e et seq.;
3. Civil Rights Violation, 42 U.S.C. § 2000d et seq.;
4. Violation of Equal Rights under the Law, Intentional Discrimination 42 U.S.C. § 1981, et seq.;
5. Equal Protection/ Deprivation of Civil Rights, Privileges and Immunities, Article IV, § 2, cl. 1, and 14th Amendment to the Constitution;
6. Conspiracy to Interfere with/ Violation of Civil Rights 42 U.S.C. § 1985;
7. Neglect to Prevent Civil Rights Violation, 42 U.S.C. § 1986;
8. Violation of U.S. Constitutional Rights, 5th Amendment Procedural and Substantive Due Process;
9. Age Discrimination, ADEA 1967 as amended;
10. American[s] with Disabili[ties] Act 1990, as amended, 42 U.S.C. § 12101 et. seq.;
11. Retaliation, 42 U.S.C. § 2000e et. seq.;
12. Negligent Hiring/Negligent Supervising/Negligent educating & training/ Negligent enforcing/ Preventing;
13. Intentional Misrepresentation;
14. Negligent Misrepresentation;
15. Defamation;
16. Injurious Falsehood/Disparagement;
17. Invasion of Privacy and Confidentiality;
18. Race Discrimination- O.R.C. 4112.02;
19. Disability Discrimination - O.R.C. 4112.05;
20. Breach of Contract-Express/Implied;
21. Breach of Covenant of Good Faith and Fair Dealing;
22. Termination as a violation of Public Policy of Ohio and U.S., 29 U.S.C. § 701;
23. Interference with Contractual Relations and Economic Advantage;
24. Violation of Bylaws, Rules, Regulations, Policies and Procedures; and
25. Intentional Infliction of Emotional Distress.

On December 7, 2001, defendants filed a motion to dismiss pursuant to Fed. R.

Civ. P. 41 (b) as result of plaintiff's failure to cooperate in discovery and to comply with

---

[3] Mr. Kemme was the assistant director of radiology at Christ Hospital and Mr. Parlato's direct supervisor.  (Doc. 62, Ex. 1 (Affidavit of David Parlato ("Parlato Aff.")

the Court's prior Orders. (Doc. 13). The Court denied defendants' motion but sanctioned plaintiff "due to his bad faith failure to satisfy his discovery obligations." (Doc. 24). After a tumultuous discovery period, defendants filed a motion for summary judgment on March 27, 2003. (Doc. 62). Plaintiff's opposition memorandum consisted of a motion to strike defendants summary judgment motion, a motion to strike the declaration of Sharyn Makrancy, and a motion for a protective order precluding the use of plaintiff's deposition testimony Doc. 63), each of which has been denied. (Doc. 76).

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary

judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

A court need not give credence to "mere allegations," or draw inferences where they are implausible or not supported by "specific facts." *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *see also Mitchell v. Toledo Hosp.,* 964 F.2d 577, 585 (6th Cir.1992). Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 482 (7th Cir. 1980), *cert. denied,* 451 U.S. 914 (1981)).

In order to prevail on his age, race and national origin discriminations claim under Title VII[4], plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Simon v. City of Youngstown,* 73 F.3d 68, 70 (6th Cir. 1996). In order to make this showing, plaintiff must demonstrate: (1) that he was in a protected class; (2) that he was qualified for the job that he held during the time in question; (3) that he suffered an adverse employment action; and (4) that he was treated differently than similarly-situated individuals who were not members of her protected

---

[4] Age discrimination cases under the ADEA are analyzed under the same framework as employment discrimination cases under Title VII. *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir.2002) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992)).

class. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802-03.

Here, it is undisputed that plaintiff is a member of a protected class. However, he plainly has failed to come forward with sufficient facts to prove that he was qualified for the job at the time in question in order to rebut Mr. Parlato's determination that he "display[ed] difficulty in performing routine exams, . . . displayed difficulty in maneuvering the ultrasound probe, he confused right-sided and left-sided vessels, and he caused physical pain to some of the patients he examined." Parlato Aff. at ¶ 9. Accordingly, defendants are entitled to judgment as a matter of law with respect to plaintiff's age, race, and national origin discrimination claims.

In order to establish a prima facie case of retaliation a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Allen v. Mich. Dep't of Corrections,* 165 F.3d 405, 412 (6th Cir.1999).

There is no evidence that plaintiff engaged in a protected activity. Defendants deny that they received a copy of the letter he allegedly sent to Ms. Makrancy memorializing his complaints of discrimination, and he has not produced a copy of the letter. Accordingly, defendants are entitled to judgment as a matter of law with respect to plaintiff's retaliation

claim.

Title VII prohibits racial harassment that creates a hostile or abusive work environment. *See Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir.1999). In order to establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show: 1) that he is a member of a protected class; 2) that he was subjected to unwelcome racial harassment; 3) that the harassment was based on race; 4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *See id.*

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations and citations omitted). Again, plaintiff has failed to produce any evidence that he was subjected to any unwelcome harassment as a result of his age, race, or disability. Plaintiff's colorful allegations, without more, are insufficient to withstand defendants' motion for summary judgment.

To make out a prima facie case under Title II of the ADA, a plaintiff must establish that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under

the program solely because of his disability. *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003); *citing Kaltenberger v. Ohio College of Podiatric Med.,* 162 F.3d 432, 435 (6th Cir.1998); *see also Burns v. City of Columbus,* 91 F.3d 836, 841 (6th Cir.1996) (setting forth the *prima facie* case under the Rehabilitation Act).

With respect to an individual, "disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiff cannot make out a prima facie case under the ADA because he has failed to establish that his alleged illness limits a major life activity and more importantly, that he is qualified for the position of vascular sonographer.

Section 1981 prohibits racial discrimination in the making and enforcing of private contracts. *See* 42 U.S.C. § 1981. Section 1981 claims are analyzed under the Title VII *McDonnell Douglas/Burdine* framework. *Newman v. Federal Exp. Corp*. 266 F.3d 401, *406 (6th Cir.2001) citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

Because plaintiff fails to make out a prima facie case of discrimination under Title VII, his Section 1981 claim fails as well. Additionally, a section 1981 claim arises out of an underlying contract, and plaintiff has failed to show the existence of an employment contract. Defendants are therefore entitled to judgment as a matter of law with respect to

plaintiff § 1981 claim.

To make out a claim under 42 U.S.C. § 1985(3), plaintiff must show that two or more persons conspired to deprive him of his civil rights because of race. *Griffen v. Breckenridge,* 403 U.S. 88, 102-103 (1971). This statute requires that plaintiff show that defendants acted to deprive him of his rights with "discriminatory racial animus." *Id*. at 102. Moreover, the Supreme Court held that § 1985(3) is not available as an alternative means of redressing violations of Title VII. *See Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d. 957 (1979).

Plaintiff has failed to provide any evidence that defendants acted with discriminatory racial animus. Moreover, the Court finds that plaintiff's § 1985 claims are properly redressed under Title VII.

The district courts in Ohio uniformly agree that a Section 1986 claim is premised on a violation of Section 1985. *See Boddie v. American Broadcasting Companies, Inc.*, 694 F.Supp. 1304 (N.D.Ohio 1988); *Givan v. Greyhound Lines, Inc*., 616 F.Supp. 1223 (S.D.Ohio 1985); *Buchanan v. Sowa*, 592 F.Supp. 1009 (D.C.Ohio 1984). Given that plaintiff's Section 1985 claim should be dismissed, plaintiff's section 1986 claim must also fail. *See Castle v. Central Benefits Mutual Insurance Co.,* 751 F.Supp. 717, 726 (S.D Ohio 1990). See also *Jackson v. Harris,* 977 F.2d 581, 1992 WL 238321, **1 (6th Cir. 1992)(finding an action predicated on § 1986 cannot survive plaintiff 's failure to establish a violation of rights under § 1985).

11

Next, plaintiff's constitutional claims require dismissal because the Hospital is not a state actor. *See Lyle v. Jackson* 49 Fed.Appx. 492, *494, 2002 WL 31085181, *1 (6th Cir.2002). Thus, defendants are entitled to judgment as a matter of law with respect to such claims.

Finally, it is not necessary to address the merits of plaintiff's state law claims.[5] Under 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. *Dobbs-Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 546 (6th Cir. 1999), *cert. denied,* 529 U.S. 1019 (2000). The Sixth Circuit has recognized a general rule disfavoring a district court's exercise of pendent jurisdiction when federal question claims are dismissed before trial. *See Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987) (*citing United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without

---

[5] Plaintiff's complaint alleges the following state law claims: negligent hiring/negligent supervising/negligent educating & training/ negligent enforcing/ preventing; intentional misrepresentation; negligent misrepresentation; defamation; injurious falsehood/disparagement; invasion of privacy and confidentiality; race discrimination- O.R.C. 4112.02; disability discrimination - O.R.C. 4112.05; breach of contract-express/implied; breach of covenant of good faith and fair dealing; termination as a violation of public policy of Ohio; interference with contractual relations and economic advantage; violation of bylaws, rules, regulations, policies and procedures; and intentional infliction of emotional distress. (Doc. 2).

reaching their merits.").

Accordingly, in light of the recommendation that plaintiff's federal claims should be dismissed, it is further recommended that plaintiff's state law claims should be dismissed without prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

Defendants' motion for summary judgment (Doc. 62) should be **GRANTED** and that judgment should be **ENTERED** in favor of defendants as to plaintiff's 42 U.S.C. § 2000e-5, 42 U.S.C §§ 1981, 1983, 1985, and 1986, 29 U.S.C. § 621 (ADEA), 42 U.S.C. § 12101 (ADA), and First, Fifth and Fourteenth Amendments claims. It is further **ORDERED** that plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. As no further matters remain pending for this Court's review, the case should be **CLOSED.**

**DATE:** January 27, 2004              \_\_s/ David S. Perelman\_\_\_\_\_
                                         David S. Perelman
                                         United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARLINGTON AMADASU,

        Plaintiff,                                    Civil Action No. C-1-01-284

vs.

THE CHRIST HOSPITAL, et al.,                 (Dlott, J., Perelman, M.J )

        Defendants.

**NOTICE**

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).