UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION



| | |
|---|---|
| DARLINGTON AMADASU<br>Plaintiff | CASE NO. C-1-01-284 |
| V. | ( Perelman/Dlott) |
| HEALTH ALLIANCE<br>OF GREATER CINCINNATI, et al<br>Defendants | |

### ADDENDUM MEMORANDUM IN SUPPORT OF PLAINTIFF'S

### OBJECTIONS TO MAGISTRATE'S REPORT and RECOMMENDATIONS; OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION; and PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff incorporates by reference all the original pleadings, memorandum, affidavit and all the exhibits all of which were compiled in Volumes I and II as if reinstated herein with full force and effect.

### COUNT 13 & 14

X.  **Genuine Issues of Material Fact Exist As To Plaintiff's Intentional and Negligent Misrepresentations Claim Making Summary Judgment Improper For Defendants, Alternatively, No Disputed Issues of Material Facts Making Judgment Proper For Plaintiff**

Plaintiff should establish: (1) a misrepresentation of material, existing fact; (2) made with knowledge of falsity; (3) with intent to induce the plaintiff to rely; (4) reasonable reliance of the plaintiff; and (5) damages. See Hart v. McLucas, 535 F.2d 516, 519 (9th Cir. 1976) and United States v. Kiefer, 228 F.2d 448 (D.C. Cir. 1955).

Defendants had seriously misled plaintiff concerning employment. In misrepresentation case, the focus is generally on statements made to employee-plaintiff at the time of hiring or when plaintiff was induced to accept the offer and stay on the job rather than accept other an inside and or outside offer. See Shebar v. Sanyo Business Sys. COrp., 218 N.J. Super.111, 526 A.2d 1144 (1987).

(1).   During the interview and at the time of hiring, defendants represented to plaintiff that their Registered Vascular Technologist (RVT) position had been hard for them to fill for several months and

1

they would hire, orient, train and wholly support plaintiff for the hard-to-fill position if plaintiff would agree to be hired and trained; defendant represented and offered as inducement committed minimum of 24 months tenure of employment security, which plaintiff accepted; defendants represented documented progressive corrective (disciplinary) action, thorough pre-termination investigation, peer review, due process and discharged only for documented substantiated just cause, etc; **(2).** But at the time the statements were made, they were known to be false for immediately upon starting to work defendants refused and failed to provide the mandatory orientations and training; **(3).** Defendants never intended to orient, train and support plaintiff and to follow through with other aforesaid representations and or promises; **(4).** Defendants made their representations and promises to induce reliance and indeed, induced plaintiff to rely on them to his detriment by forgoing other employment opportunities within and outside the Alliance; and **(5).** Shortly after hiring plaintiff, defendants reneged on their representations and promises and discharged plaintiff for fabricated unsupported reason, which defendants later admitted was false.

In Elliott v. Shore Stop, Inc., 238 Va. 237, 384 S.E.2d 752 (1989), the court held, "an action in tort for fraud and deceit may be predicated on promises made with the present intention not to perform them; the gist of fraud is the fraudulent intent." Defendant promised to orient, train, and support and hire plaintiff for a definite 24 months, promises that the defendant did not intend to perform at the time they were made. Defendants, like Shore Stop, *Id*, claimed that plaintiff did not detrimentally rely on their promises and representations because there was no evidence indicating that plaintiff relied on any alleged misrepresentation to his detriment (i.e., there is no evidence that he declined other employment opportunities in reliance on any such alleged misrepresentation, this argument fails as will be developed below. However, the Elliot court, Id, held that the fraud was complete two days before the plaintiff learned that she had been set up; the plaintiff did not know of the employer's scheme until just hours before the test and the court also held that a tort action exists against those who conspired to induce a breach of contract. Here in this action at bar, the misrepresentations were complete before plaintiff knew that defendant did not intend to keep promises and they conspired to fire plaintiff.

**Evidence of defendants' promises and representations:** Defendants admitted that the RVT position was hard to fill [Doc.62 memo. p.3]; Defendants' policies [Ex. Plf.00044, Plf.00069, Plf.00076-84, Plf.00100-104, Plf.00226-227 and JCAHO Standards HR.4 et seq. [Ex. Plf.00258-262] and ICAVL Essentials and Standards [Ex. Plf.00288] constituted expressed representations and promises and mandates that orientations and training must be provided to all employees regardless of their backgrounds and experience before being directed to perform the job functions.

2

Before employment, the recruiting agency, Med Tracker, had many opened sonographer positions, which plaintiff declined and accepted employment with defendants. Also defendants had other opened sonographer positions, *inter alia*, Abdominal Sonographer (AS), Obstetrical and Gynecological Sonographer (OGS), and Cardiac Sonographer (CS) inside the Alliance, for which plaintiff was qualified and applied [Ex. Plf.00012; Ex. Plf.00297 Admission No. 30; Plf.00298 Admission No.8], and in [Ex. Plf.00149] defendants did induced plaintiff to decline the opened AS and OGS positions to his detriment. Defendants attempted to see the possibility of Med Tracker getting for plaintiff those jobs plaintiff had declined in detrimentally relying on defendants' representations and promises to accept employment with them [Ex. Plf.00152 is Makrancy 7/21/00 email to Parlato and Harrison]. When the facts suggest that an employee has been misled in a serious way, and that the employer is responsible, the problem will be analyzed for implied misrepresentation or concealment, and for false promises. If employer explains circumstances of employment, the full story must be told. See Varnum v. Nu-Car Carriers, Inc., 804 F.2d 638 (11th Cir.), reh'g denied, 808 F.2d 1524 (1986), cert. denied 481 US 1049 (1987).

**Representations are implied in hiring**: Employment is always contracted for within a specific factual context. The surrounding circumstances may suggest that a promise was implied; the hiring negotiations, however short, will always be conducted in the context of certain mutually understood facts. Some of those are facts spelled out in writing or discussed openly; others are so basic that no discussion is necessary, see *Restatement 2d of Torts Section 525 note 2 comment e*, or they are necessarily implied by the offer of a job itself. Defendants made express representation of continued availability of work when they offered a fixed term contract. Thus, there was an expressed and implied representation that there were no presently existing facts that would cut the job off shortly after the employee-plaintiff came to work

In Wildes v. Pens Unlimited Co., 389 A.2d 837 (Me.1978) court found fraud where shortly after the employee was hired for a specific sales representative position, his position was eliminated in reorganization. The restructuring was known to have been contemplated at the time of hiring, and the termination took place three days after the employee, at the company's urging, relinquished another position elsewhere. This Wildes *Id*, case somewhat bears analogy to this instant case because shortly after plaintiff was hired for specific vascular technician position (VT), was directed to perform registered vascular technologist (RVT) without affording him the mandated orientation and training. The intent not to afford plaintiff the orientation, training and the 24 months fixed term of employment had been contemplated at the time of hiring, and termination took place three weeks after plaintiff, at the defendants' urging declined other Med Tracker's opened jobs and the other AS, OGS and CS positions opened at the Alliance. See also Andolsun v. Berlitz Schools of Languages, 196 A.2d 926 (D.C.1964). Also see Elizaga v. Kaiser Found. Hosp., Inc., 259 Or.542, 487 P.2d 870 (1971). In both Andolsun, *Id*, and Elizaga, *Id*, the courts reasoned that the employer's knowledge of the employee's situation certainly was important in showing that an implied representation did exist.

Another necessary implication of the offer of a job is that plaintiff was, at the time of hire, acceptable to the defendants. In McGrath v. Zenith Radio Corp., 651 F.2d 458 (7th Cir.1981) the employee surrendered his

3

stock and a stock option to the acquiring company based on an assurance that he would become president of the acquired company. The undisclosed collateral fact was that his superiors had met and decided that instead of promoting him, they would fire him. Discharge was plainly inconsistent with a promotion, and the promise of promotion carried with it an untrue representation that the employee was acceptable to the acquiring company. In analogy to this instant case, plaintiff, at the urging of defendants, declined defendants' opened AS, OGS and CS positions for VT position based on defendants' assurance that plaintiff would be oriented and trained to become RVT and to be hired for 24 month-fixed term. The undisclosed collateral fact was that Parlato and Kemme had met and decided that instead of affording plaintiff the promised and mandated orientation and training, they would fire him. Discharge was plainly inconsistent with orientation, training, and the promise of orientation and training and tenure carried with it an untrue representation that the plaintiff was acceptable to the defendants.

**Defendants made Promise with intent not to perform:** In Shebar v. Sanyo, Id, supra, plaintiff through an executive search agency found a position with Sony, which promised and assured him a vice-president position. Plaintiff subsequently tendered resignation from his employer, Sanyo, which assured him of job for life to stay with it. In reliance on the promises his employer, Sanyo, made to him, plaintiff agreed to stay with Sanyo and rescinded his acceptance of Sony's job offer and communicated it to the recruiting agency. Four months after refusing the plaintiff's resignation, Sanyo summarily fired him with ignominy and asked him to leave the premises forthwith. The court held that the plaintiff had a claim for fraud or misrepresentation. When his two superiors made their promises of job security to him and induced him to forgo employment with a competitor, if they then had the intention of firing him in the near future, that was fraud. See [Cf. Ex. Plf.00152 para.3; Plf.00157, Plf.00218 para.6; Plf.00226-227].

In analogy to this case at bar, plaintiff through recruiting agency, Med Tracker found many positions with defendants and other employers. Defendants' promises and assurances to orient, train and support plaintiff for the hard-to-fill RVT position induced plaintiff to detrimentally relied to forgo other positions the recruiting agency found for plaintiff as well as other opened positions (AS, OGS, CS) with the defendants, which defendants encouraged plaintiff to forgo. The defendants buttressed their promises of good fortune on the job with specific falsehoods of orientations, training, supports, etc, for plaintiff and they withheld existing facts inconsistent with the offer of a job and allowed the false and misleading implication of available work to stand. Defendants offered a specific VT job position with particular 24 months term as a ruse to lure plaintiff into coming to work for them in other VS job position. The deceit is present; to remedy the deceit the courts recognize misrepresentation or fraud action when a promise is made with a present intent not to perform. See Casale v. Dooner Lab, Inc., 503 F.2d 303 (4th Cir.1973); and Hamlen v. Fairchild Indus., Inc., 413 So.2d 800 (Fla.App.1982). The violation of a promise is one of the requirements for this kind of action. Defendant employers made the promise with fraudulent intent, i.e., the intent to deceive the employee-plaintiff. See Godwin v. Dinkler St. Louis Mgmt. Corp., 419 S.W.2d 70 (Mo.1967).

4

**Defendants breached their duty to disclose change of intent:** In <u>McGrath v. Zenith Radio Corp.</u>, *Id*, *supra*, the decision not to fulfill the promise of employment was subject to serious doubt almost immediately after it was made and well prior to the acts of reliance by the employee. The court found that the failure to correct the mistaken impression was a continuing course of conduct amounting to fraud. *Id.* at 468.

**As for the negligent misrepresentation claims (COUNT 14):** The elements of negligent misrepresentation are (1) one who, in course of his or her business, profession, or employment; (2) supplies false information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information. *Restatement 2d of Torts, Section 552 (1977) comment*. Plaintiff is required to show (a) defendant supplied the information constituting misrepresentation to plaintiff for use in business transactions with third parties; (b) defendants are in the business of supplying information and (c) plaintiff reliance on the misstatement was justified or reasonable. See <u>Rankow v. First Chicago Corp.</u>, 870 F.2d 356 (7th Cir.1989); and <u>Christiana Marine Service Corp. v. Texaco Fuel & Marine Marketing, Inc.</u>, (2002 Del. Super. LEXIS 305).

(a) Defendants misrepresented to plaintiff that plaintiff would be oriented, trained, supported for RVT position for a fixed term employment, which Plaintiff accepted and conveyed to third party recruiting agency, Med Tracker, which upon being guided by the information foreclosed other opened positions for plaintiff but defendants failed to fulfill the representations; (b) Defendants, particularly the Hospital, are in the business of supplying information for the guidance of third parties; (c) Plaintiff reasonably or justifiably relied detrimentally on the misrepresentation to decline other job positions inside and outside the Alliance.

Ohio, like many states, recognizes negligent misrepresentation as a tort. See <u>Smith v. Reynolds Metals Co.</u>, 497 So.2d 93 (Ala.1986); and <u>McAfee v. Rockford Coca-Cola Bottling Co.</u>, 40 Ill. App.4d 521, 352 N.E.2d 50 (1976) in which court allowed an action based on the direct statement to the plaintiff because authority to make the promise was impliedly represented, and the speaker had been negligent in ascertaining the extent of his authority and whether it was safe for the plaintiff to terminate his prior employment, even absent an intent to defraud. No element of scienter was required. However, in most jurisdictions the scienter requirement for a fraud suit may be satisfied by showing of reckless disregard for the truth or 'conscious indifference' to the truth, a state of mind more serious than negligence. In this instant case, Defendants recklessly disregarded the mandated orientation and training.

Proof that a promise was made without intent to perform may not generally be based solely on the fact that promise was broken. See <u>Sherman v. Mutual Benefit Life Ins. Co.</u>, 633 F.2d 782, 785 (9th Cir.1980). In <u>Doody v. John Sexton & Co.</u>, 411 F.2d 1119 (1st Cir. 1969), the employer's admission that he had been 'kidding' when specific promises about the job were made was enough to establish that there was no intent to perform at the time of the promise. Generally, however, circumstantial evidence must be relied upon to prove that the promise was not genuine when made. Thus, in this instant action, defendants' admission that they subjected plaintiff to disparate treatment would be enough to establish that there was no intent to perform at the

5

time of the promise. Among the circumstances that have been held to establish the fraudulent intent is a scheme to eliminate the plaintiff as a competitor by false employment promises. See Shebar v. Sanyo, Id, supra. Here also Parlato decided to eliminate plaintiff as his potential competitor.

**Reasonableness of employee's reliance:** Actions for employment fraud or misrepresentation have been founded on a variety of types of employee reliance, *inter alia*, an employee's giving up other work or employment opportunity. See Casale v. Dooner, Id. supra. Thus, plaintiff has reasonably relied upon defendants' misrepresentation to decline other opened positions inside and outside the Alliance. Since "reasonableness" is a question of fact for the trier to determine based on all of the circumstances, summary judgment for defendants would be improper. "...fact issues existed as to whether defendants knew that their alleged misrepresentations were false when they were made and whether lender relied on alleged misrepresentations, precluding summary judgment," Wong v. Aragona, (D.Md.1993) 815 F.Supp.889, affirmed 61 F.3d 902.

## COUNT 8

**Y. Genuine Issues of Material Fact Exist As To Plaintiff's Procedural and Substantive Due Process Rights Violation Claim Making Summary Judgment Improper For Defendants, Alternatively, No Disputed Issues Material Facts Making Judgment Proper For Plaintiff**

To state a claim for violation of his due process rights under the Fifth Amendment plaintiff must identify protected liberty and property interests that have been denied. See Garcia v. District of Columbia, 56 F.Supp.2d 1 (D.D.C.1998).

The Fourth Amendment guarantees to the plaintiff the rights to be secured in his person, papers and effects against unreasonable searches and seizures, which shall not be violated. Plaintiff's person includes his reputation, confidentiality and privacy; his effects includes his personal bag with or without contents; and his papers includes his personal information given in confidence and privately to defendant Alliance-Christ. On or about 7/24/00, defendants, particularly, Parlato without consent, probable cause or justification and without warrant intruded into, searched plaintiff's personal bag and seized or took out a bottle with plaintiff's prescription medication thereby violated plaintiff's protected rights of privacy, confidentiality and to secured in his effects. On or about 7/24/00, defendants, particularly Parlato, without justification, probable cause, consent and authorization, using his employer-given access code, intruded, searched and obtained from the hospital employees' computer database plaintiff's private and confidential personal information, such as wages and age thereby violated plaintiff's privacy, confidentiality and rights to be secured in his papers.

The Fifth Amendment guarantees to plaintiff rights of liberty and property interests not to be

taken away without due process. Plaintiff's liberty interests include without limitation, his good name, profession, means of livelihood, pursuit of happiness, honor, integrity, reputation, mobility, etc. Plaintiff has property rights and interest in education, training, his job, and continuing employment. The U.S. Supreme Court in Perry v. Sindermann, 408 U.S.593 (1972) held that a public school teacher had a right of tenure because the college administration had raised his expectations in the college's faculty guide. The court further held that a teacher's interest in the possibility of tenure is a property interest for due process purposes. Thus, plaintiff had property interest in the 24 months tenure subject to due process deprivation.

On or about 8/1/00 without notice and opportunity to be heard, plaintiff's employment, job and means of livelihood were summarily and ignominiously taken away from him by defendants without due process guaranteed to him by the Constitution and Statutes of the United States and the byelaws of the defendant Hospital; in and between August and December 2000, defendants took away or destroyed plaintiff's reputation by communicating to Mercy Franciscan Hospital and its employees, agents and servants that plaintiff was a "fake, quack, and did not know anything about his profession."

Adequate notice detailing the reasons for a proposed termination of a constitutionally protected liberty or property interest must be afforded to individuals prior to the deprivation. Taylor v. Slick, 178 F.3d 698 (C.A.3 Pa.1999). Due process, guaranteed by the Fifth Amendment, requires specific notice and adequate opportunity to be heard prior to…decisions depriving individuals of liberty or property interests. In re Bailey, 182 F.3d 860 (C.A.Fed.1999). Under due process clause, a deprivation of life, liberty or property must be preceded by notice and opportunity for hearing appropriate to nature of the case; this principle requires some kind of hearing prior to discharge of …employee who has constitutionally protected property interest in his or her employment. Stone v. F.D.I.C., 179 f.3D 1368 (C.A.Fed.1999). An impartial judge is a basic due process requirement. U.S. v. Nathan, 188 F.3d 190 (C.A.3 N.J.1999). "…Due process requires some sort of predischarge hearing. Lee v. Western Reserve Psychiatric Habilitation Ctr, 747 F.2d 1062 (6th Cir. 1984)

Defendants had admitted that they had subjected plaintiff to disparate treatment; had violated federal and state anti-discrimination statutes; had violated their very own byelaws and JCAHO Standards guaranteeing due process before depriving plaintiff of his liberty and property interests.

Defendants did not dispute this material fact, thus, warranting summary judgment in favor of plaintiff as a matter of law.

## ADDITIONAL AUTHORITIES IN SUPPORT
## COUNT 20 & 21

## BREACH OF EMPLOYMANT CONTRACT

The formation and existence of employment contract between parties are not in dispute. Defendants' admissions of formation and existence of contract as evidenced by [Pl. Ex. Plf.00001-2. Plf.00003Pl. Ex. Plf.00297 Admission Nos.16-17; {Doc.62 memo. p.14, Ex.1 at 6, and Ex.3 p.1 at 5}] are consistent or corroborated with plaintiff's assertion.

Once a terminated employee proves a promise to continue employment…a successful breach of contract action then requires proof of a breach of the promise. <u>Darlington v. General Elec.</u>, 350 Pa. Super. 183, 504 A.2d 306, 316 (1986).

**Facts:** In the principal executory employment contract (PEEC), accessory employment contract (AEC) [Complaint Ex. A-C], and the Hospital policies manuals [Ex. Plf.00042, Plf.00044, Plf.00051-61, Plf.00062-67, Plf.00076-83, Plf.00102-104, Plf.00226-242], the hospital had obligations, duties, and expressly promised certain procedures, inter alia, progressive corrective action, due process, pre-termination thorough investigation, discharge solely by decision-maker, just cause termination and 2-year tenured employment; mutuality of duties and obligations of the parties, etc. See also [Pl. Ex. Plf.00302 p.327-329]

**Fact Issues:**

(a) Whether the defendants' letter of employment and their byelaws established a contract between the hospital and the plaintiff?

(b) Whether the hospital followed the byelaws' procedures for mandated work place lab orientations and training, and failure to follow the procedures constitutes breach of contract?

(c) Whether defendants performed their obligations and duties of affording work place lab orientation and training and failure to perform them constitutes breach of contract?

(d) Whether the hospital must follow the byelaws' procedures for disciplinary action, to wit, progressive corrective action, pre-termination thorough investigation, no discharge until peer review, and human resources approves termination recommendation, and sidestepping the promised procedures constitutes breach of contract?

(e) Whether the hospital complied with abide by HCQIA, JCAHO, and ICAVL requirements and failure to abide constitutes breach of contract?

(f) Whether the defendants produced documentary evidentiary proof of their bald conclusory reasons for discharge?

(g) Whether termination constitutes breach of contract?

**Holdings:** Courts generally require strict compliance with contractual terms, and <u>failure to perform any term of a contract is a breach of contract</u>, but non-performing party is liable for damages, <u>In re Krueger</u>, 192 F.3d 733

(1999) relying on <u>Restatement of Contracts, Section</u> 274. 397. Employer can promise merely that it will follow certain procedures in terminating employees, but here as in this case the hospital made no attempt to follow its own procedures. In *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 631 (1983), court held that a breach occurred because the employer made no attempt to follow the procedures before dismissing the plaintiff. In <u>Struble v. Lacks Industries, Inc.</u>, 157 Mich.App. 169, 403 N.W. 2d 71 (1986). The court held that with regard to whether termination was in breach of a contract, i.e., whether the plaintiff was discharged for cause and in compliance with applicable procedures, are for the jury. In <u>Toussaint v. Blue Cross & Blue Shield</u>, 408 Mich. 579, 292 N.W.2d 880, 115 LRRM 4708 (1980), the court held that a provision of an employment contract stating that an employee shall not be discharged except for cause is legally enforceable. The provision may become part of contract either by express oral agreement or by reason of an employee's legitimate expectation. See, also <u>Gunsolley v. Bushby</u>, 19 Or. App. 884, 529 P.2d 950 (1974) (hospital's written policy held to be part of the employee's employment contract.). <u>Weiner v. McGraw-Hill, Inc.</u>, 57 N.Y.2d 458, 457 N.Y.S.2d 193 (1982). Definite term employment carries with it just cause and due process.

Defendants admitted that they did not perform their contractual and byelaws obligations and duties and did not follow any of the hospital's byelaws or policies as well as JCAHO and ICAVL Standards. Defendants admitted that

To obtain summary judgment in contract claim against it, defendant must establish absence of any material fact as to nonexistence of one or more of components essential to plaintiff's contract claim. <u>Independent Machinery, Inc. v. Kuehne & Nagel, Inc.</u>, (N.D. Ill.1994) 867 F.Supp.752. Defendants failed to establish the absence of the elements of contract, to wit, offer, acceptance, assent and consideration, but all of which plaintiff had established. In considering propriety of motion for summary judgment in contract action, district court must not look beyond four corners of the document. <u>Works v. Simpson</u>, (D.C.1979) 86 F.R.D. 9

Defendants argued that there was no tenure of contract but plaintiff asserts that parties had duration of contract. In former employee's action against employer alleging discharge was in violation of his contract of permanent employment, issues of material fact existed on question of duration of contract, precluding summary judgment. <u>Hodge v. Evans Financial Corp.</u>, (1983) 707 F.2d 1566, 228 U.S.App.D.C. 161.

Issue of material fact exists on question of just cause for discharge precluding summary judgment. "That employee would not be terminated without just cause, when coupled with employee's reliance, is sufficient to raise triable issues of fact on breach of employment contract claim...," <u>Abel v. Bonfanti</u>, (S.D.N.Y.1985) 625 F.Supp.263.

## DEFENDANTS' SUMMARY JUDGMENT MOTION FULL OF CONFLICTING and CONTRADICTING FACTS, MUST BE DISCREDIT

Upon review of defendants' summary judgment motion with supporting exhibits, plaintiff and other reasonable minds would come to one conclusion that the motion is filled with colossal inconsistencies and contradictions of facts, *inter alia*, defendants' claim that plaintiff was hired as vascular sonographer (VS) is inconsistent with or contradicted by record evidence stating that plaintiff was hired as vascular technician (VT); defendants hired plaintiff to do the job function of VT but they are contending that plaintiff did not perform well as VS; defendants pretended or impersonated Parlato as technical director but record states he was at all times relevant to this action a nominal lead VT; defendants' memorandum and supporting declarations acknowledged the existence of consented offer and consented acceptance evidencing the existence of employment contract but argued that there was no contract, etc. "Even if moving party comes forward with abundance of evidence supporting its theory of case, nonmoving party may nevertheless defeat motion for summary judgment by countering with evidence of his own, which if credited by fact finder, would entitle nonmoving party to verdict in his favor, or nonmoving party may demonstrate that evidence tendered by movant is itself laced with contradictions of fact." Ziolkowski v. Caterpillar, Inc., (E.D. Wis.1992) 800 F.Supp. 767, affirmed 996 F.2d 1220.

Respectfully submitted,

_____
Darlington Amadasu
Lay pro se Plaintiff.

**CERTIFICATE OF SERVICE**

I certify that the forging was served on Michael A. Roberts by fax on 4/6/04

Fax 651-3836

_____